Filed 4/19/22  P. v. Sengsongkham CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEUTH SENGSONGKHAM,<br><br>Defendant and Appellant. | F082938<br><br>(Super. Ct. No. F15902435)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Gary D. Hoff, Judge.

Philip M. Brooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P. J., Levy, J. and Meehan, J.

Defendant Leuth Sengsongkham previously appealed after he was convicted of murdering his wife and another man and was sentenced to 90 years to life in prison. On appeal, we remanded for the trial court to consider its newly granted discretion to strike the two 25-year-to-life firearm discharge enhancements pursuant to Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620) (Stats. 2017, ch. 682, § 2, eff. Jan. 1, 2018). On remand, the court declined to strike the enhancements.

Defendant appealed again, and his appointed counsel asked this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. Defendant did not respond. Finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## BACKGROUND

The following background facts, up to our remand to the trial court, are taken from our prior opinion, *People v. Leuth Sengsongkham* (Oct. 22, 2019, F076337) [nonpub. opn.] (*Sengsongkham*).

> "Defendant and [Rattana] Chounramany lived together for over 30 years and raised seven children. [They considered themselves married.] In 2014, however, they began to experience [domestic] problems. Approximately six months before the events of April 18, 2015, defendant and Chounramany started sleeping in different rooms. Communication between the two diminished and they were becoming more distant. Approximately one to two months before April 18, 2015, Chounramany stopped cooking for defendant. Conversely, she began cooking for [another man—Somkeo] Thongkhamvilay, their friend and fellow farmhand who frequently attended family gatherings. A few weeks before April 18, 2015, at one such function, Chounramany was overheard telling defendant 'he was a very jealous person,' 'he doesn't know what he's talking about,' and 'she was going to leave [him].' Defendant did not respond. Instead, he remained 'very quiet' and 'show[ed] no emotions.'

2.

"On the morning of April 18, 2015, defendant woke up and pocketed his pistol. He and Chounramany then went to a warehouse, which was nearby or adjacent to Thongkhamvilay's living quarters. At the warehouse, defendant, Chounramany, and Thongkhamvilay loaded wooden stakes into a white box truck. Afterward, defendant—accompanied by Thongkhamvilay—drove the truck and Chounramany drove the couple's red Toyota Camry to the company farm in Fowler where all three worked. Five to ten minutes after they arrived at the farm, about 180 feet away from the truck, defendant shot Thongkhamvilay six times: once in the forehead, once in the mouth, once in the neck, once in the left shoulder, once in the upper right back, and once in the lower back. He also shot Chounramany twice—once in the chest and once in the head—when she tried to stop him. Thereafter, defendant drove the Camry to Las Vegas, Nevada, an approximate[ly] [five-and-a-half-to-six-hour] trip, and visited the residence of Joann, one of his and Chounramany's daughters.

"Cognizant of the issues between her parents, Joann previously invited defendant to stay with her 'to take a break,' an offer he declined. When defendant arrived at her home in the afternoon of April 18, 2015, Joann observed he was 'more quiet than normal.' She phoned Chounramany and 'grew more worried' when her mother did not answer. Joann then contacted her siblings and other relatives who lived in or around Fresno and asked them to check on Chounramany. Around 7:00 p.m., members of Chounramany's family went to the farm. There, they encountered Onofre Denis-Silva, the employee responsible for irrigating the crops. Denis-Silva led the group to the bodies of Chounramany and Thongkhamvilay, which he had discovered some time earlier. A relative phoned Joann and informed her about the deaths. Joann asked defendant 'what he did.' He replied, 'I shoot, I shoot and kill mom and the guy.' The following morning, Joann took defendant to a police station in Henderson, Nevada, at [defendant's] behest.

"In an interview with a Fresno County Sheriff's [d]eputy …, defendant confessed he shot Chounramany and Thongkhamvilay. [Defendant] asserted his wife and coworker had been engaged in an extramarital affair for almost a year. When defendant implored Chounramany to end the affair, she said, 'I don't care if you don't like it, then just leave me.' About five months before the shooting, Chounramany professed she 'slept with [Thongkhamvilay] already,' which angered defendant. On the morning of the shooting, she told him she was 'gonna move out to [Thongkhamvilay's] house.' Enraged, defendant decided to bring his pistol to the farm. He did not argue or converse with

3.

Thongkhamvilay before killing him since he 'kn[e]w [Thongkhamvilay] [was] … try[ing] to take [his] wife away.' " (Fns. omitted.)

The Fresno County District Attorney charged defendant with the murders of Chounramany and Thongkhamvilay (Pen. Code, § 187, subd. (a);[1] counts 1 & 2 ). As to both counts, the information further alleged defendant personally used a firearm (§ 12022.5, subd. (a)) and personally and intentionally discharged a firearm proximately causing each victim's death (§ 12022.53, subd. (d)).

A jury found defendant guilty of second degree murder on count 1, first degree murder on count 2, and found true the firearm discharge allegations. On September 21, 2017, the trial court sentenced defendant to 90 years to life, as follows: on count 2, 25 years to life, plus 25 years to life for the firearm discharge enhancement; on count 1, a consecutive 15 years to life, plus 25 years to life for the firearm discharge enhancement.

On appeal, defendant contended his first degree murder conviction on count 2 should be reversed because the trial court did not properly instruct the jury on provocation. We rejected that contention, but in light of a recent amendment to section 12022.53, enacted by Senate Bill 620, we remanded to give the trial court the opportunity to consider whether to strike the firearm discharge enhancements. (*Sengsongkham*, *supra*, F076337.)

On remand, at a hearing on May 10, 2021, the trial court heard and considered argument again, but declined to strike either firearm discharge enhancement and reinstated the original sentence.

On June 10, 2021, defendant filed a notice of appeal.

## DISCUSSION

Having undertaken an examination of the entire record, we find no evidence of an arguable error that would result in a disposition more favorable to defendant. Based on

---

[1] All statutory references are to the Penal Code.

the record, we cannot say the trial court abused its discretion in declining to strike the enhancements.

## <u>DISPOSITION</u>

The judgment is affirmed.